Mellon *v.* Hammond et al.

---

MELLON, Appellant, *vs.* HAMMOND et al. Respondents.

1. A sheriff's deed under an execution against B., described the land conveyed as thirty feet front by one hundred and fifty feet deep, upon which B.'s house stood; bounded north by a lot owned by C., south by a vacant lot, &c. More than twenty years afterwards, it appeared that B., in locating the thirty feet originally conveyed to him, and in building his house, had encroached fifteen feet upon the lot of C.; but B. and those claiming under

Mellon *v.* Hammond et al.

the sheriff's deed always remained in possession of the ground upon which the house stood. In a suit by the person claiming under the sheriff's deed, for the fifteen feet of ground immediately south of the house, *it was held,* that it did not pass by that deed, as the metes and bounds therein given were not inconsistent with the further description of the lot conveyed, as thirty feet *upon which the house stood.*

### *Appeal from St. Louis Court of Common Pleas.*

This was an action brought to recover a parcel of land lying on the east side of Main street, in the city of St. Louis, fronting on Main street fifteen feet seven inches, being sixteen feet seven inches wide in the rear, and having the depth of one hundred and fifty feet (French measure) from front to rear.

By the agreement of the parties, it was admitted that John McKnight and Thomas Brady owned several lots fronting on the east side of Main street, of a depth eastwardly of one hundred and fifty feet, and extending both north and south of the land in dispute ; that both plaintiff and defendants claim the land under John McKnight, who obtained the interest of Thomas Brady in the land by partition deed ; so that both parties admit that John McKnight had title to the premises in dispute on and before the 9th of February, 1819 ; that one Margaret Lachaisse was the confirmee and owner of land fronting on the east side of Main street, running northwardly up along Main street, and lying between this street and the river ; that the land in dispute is claimed by the plaintiff as embraced within and being the southern part of the lot conveyed by John to Thomas McKnight, by deed dated 9th February, 1819—and it is admitted by the defendant, in this writing, that the north line of said lot, conveyed by John to Thomas McKnight, was coincident with the north line of the land confirmed to Margaret Lachaisse ; and, consequently, as the said lot was thirty feet in front on Main street, the south line of said lot was thirty feet south of the northern line of said Lachaisse confirmation.

There was adjoining the Lachaisse confirmation, on the north, a tract of land confirmed to one Clamorgan, which extended

from the river Mississippi westwardly, crossing Main street, the south line of the Clamorgan tract being coincident with the north line of the Lachaisse tract—their division line running from the river straight back to Main street. It was admitted that the distance of 'the southern line of the lot in dispute, described in the petition, measured from Cherry street, brought said southern line thirty feet precisely south of the dividing line between the Clamorgan and Lachaisse tracts. .

The plaintiff then read a deed from John to Thomas Mc-Knight, dated 9th February, 1819. The lot described in the deed is as follows : " The following lot or parcel of ground, situated in the town of St. Louis, butted and bounded as follows : beginning at the south-west corner (on Main street) of the lot of ground which John McKnight and Thomas Brady sold to Moses D. Bates, which is now supposed to be owned by James McGunnegle, on which the said McGunnegle now lives, and running a southwardly direction with Main street thirty English feet, and thence with a parallel line with the above mentioned line of James McGunnegle to the river Mississippi, thence up the Mississippi thirty English feet to McGunnegle's southwardly boundary line, thence with the above named Mc-Gunnegle's line to the place of beginning."

The plaintiff next read the following deed from Thomas McKnight, by sheriff, to Archibald Gamble, dated February 17, 1824, for a lot, described as follows : " A lot of ground situated on Main street, in the city of St. Louis, containing thirty feet front by one hundred and fifty feet in depth, all French measure, bounded west by Main street, north by lot belonging to the estate of James McGunnegle, east by a lot belonging to the estate of John McKnight, and on the south by a vacant lot, together with the buildings and improvements thereon, there being a two story house on the same recently erected by the said Thomas McKnight."

In the advertisement the description of the lot is thus : " A lot of ground in the city of St. Louis, containing thirty feet front on Main street, by one hundred and fifty feet in depth,

bounded west by Main street, north by lot of the estate of James McGunnegle, deceased, on the east by a lot of the estate of John McKnight, deceased, and on the south by a vacant lot, with the buildings, &c., thereon."

Deed from Archibald Gamble to John K. Walker, dated April 29, 1824—same description of land as in last deed down to "vacant lot," "together with the buildings and improvements thereon, being the same lot and buildings purchased by me at sheriff's sale, sold as the property of Thos. McKnight, as will appear by sheriff's deed, dated 17th February, 1824."

Deed from John K. Walker to George W. Scott, dated September 23, 1825—lot thirty feet front on Main street, by one hundred and fifty feet deep towards the river, more or less, bounded west by Main street, south by lot lately of the estate of John McKnight, north by lot of the late James McGunnegle, east by lot of Thomas McKnight, on which there is a stone warehouse. On the above described lot hereby sold to George W. Scott, there is a stone dwelling house, part only of which is finished, and in which one Thomas McKnight now resides. The deed then recites the above deeds as the claim of title by which Walker claimed.

Deed from George W. Scott to Wm. McCutcheon, dated January 2, 1832, describing the lot nearly the same as above, saying, "it is bounded north by a lot of the heirs of Thomas Biddle, now deceased, lately Captain McGunnegle, east by lot of the United States, on the south by a lot of ground of Geo. W. Scott, formerly the property of one John McKnight," and traces title through the foregoing deeds.

Deed from Wm. McCutcheon to plaintiff, dated 24th May, 1844—same description as last, adding, bounded "south by a lot now claimed by the heirs of John Mullanphy," and reciting, as claim of title, the above mentioned deeds.

The plaintiff then read deeds as follows : From Jacques Clamorgan to Gregoire Sarpy ; from Sarpy back to Clamorgan, and from Clamorgan to John McKnight and Thomas Brady, and from McKnight and Brady to Moses D. Bates—from

Moses D. Bates to Paul Anderson, and from Anderson to Captain James McGunnegle. These deeds were introduced to show that the south line of the lot conveyed to Moses D. Bates by McKnight and Brady was the southern line of the tract of land confirmed to Jacques Clamorgan, and that the lot of Mc-Gunnegle, as well as of Bates, called for in the deeds in the plaintiff's chain of title, had a southern boundary line common with the northern boundary line of the Lachaisse tract—and this purpose for which they were introduced is admitted by the defendants in said written agreement, in these words : " The south line of the lot described in the deeds from McKnight and Brady to Moses D. Bates, and in the deeds down to McGunnegle, is by that description the south line of Clamorgan and north line of Madame Lachaisse."

The defendants were admitted to be in possession.

The defendants, Coste and Camden, were admitted to be executors of Bryan Mullanphy.

Defendant's possession of the premises in dispute was (in the language of the agreed facts) by using it as a board yard, without a fence surrounding it, and before that possession was taken, the land had been for some years vacant and unoccupied by any body. The plaintiff and those under whom he derives title, had not possessed the same since about the date of John McKnight's deed to Thomas McKnight, except as follows : " The persons occupying the stone house frequently passed to and from the street and the back part of the stone house over a strip of said land about three feet wide, extending along the north line of the land in dispute from the north-west corner thereof eastward about fifty feet to the back porch of said stone house, using said strip as a convenient mode of access from the street to the back part of the house, down to the present time."

For the defendants it was admitted, that the land occupied in fact by James McGunnegle (part of that described in his deed from Paul Anderson) did not come so far south as the line between Clamorgan and Lachaisse. The southern boundary of

the land so actually occupied by him, was thirty feet north of the land in dispute.

Thomas McKnight, shortly after his deed from John Mc-Knight, built a stone house on a lot, the southern boundary of which is the northern boundary of the lot in dispute, and he (McKnight) and those claiming under him, down to the plaintiff, have constantly possessed that lot for more than twenty years thereafter, and it is still possessed by the plaintiff. Said lot is embraced between the letters A, L, M, D, on the diagram.

By a mortgage, dated 20th August, 1821, recorded October 10, 1821, John and Thomas McKnight conveyed to the Bank of Missouri " a lot of ground in the northern part of the town of St. Louis, owned by *Thomas.* McKnight, containing the quantity of thirty English feet front, eastwardly on the Mississippi river, by one hundred and fifty feet, bounded northwardly by the lot and premises now (then) owned and occupied by James McGunnegle, southwardly by lot of John McKnight, hereinafter conveyed and described, westwardly by the lot of said Thos. McKnight, and eastwardly by the Mississippi river," being part of property conveyed by John to Thos. McKnight, by deed of February 9, 1819. Also, a lot owned by *John* McKnight, adjoining the above lot, " containing sixty feet in front, westwardly on Main street, by three hundred feet to the Mississippi river, bounded westwardly by Main street, northwardly by the lot above mentioned, and conveyed by said John to said Thomas McKnight, as aforesaid, southwardly by lot of said John McKnight, being part of lot heretofore owned by M. P. Leduc, east by the Mississippi river."

This mortgage was foreclosed in 1832, and John Mullanphy bought at the sale under foreclosure. Whatever title said Mullanphy thereby acquired is now owned by defendants.

The plaintiff asked the court to give the following five instructions, which were refused :

1. The jury are instructed that, to ascertain which was the lot designated as the lot of McGunnegle and Bates, mentioned

in the deeds in the plaintiff's chain of title, they will be governed by the lines thereof as shown by the deeds given in evidence by the plaintiff, connecting McGunnegle with Clamorgan; and the south line of the Bates or McGunnegle lot, as shown by the deeds conveying it, is the northern boundary line of the lot conveyed by John to Thomas McKnight.

2. The jury are instructed that, even though the lot of McGunnegle was not occupied as far south as the southern line of the lot described in the deed to him, yet the lot designated as the lot of McGunnegle means the lot conveyed to him, and whether occupied by him or not, is not a subject which controls the description of the lot of Thomas McKnight.

3. If the jury believe from the evidence, that the dividing line of the Clamorgan and Lachaisse tracts of land is a well ascertained, notorious line, and that the line was known to the owners of the land on both sides of it (north and south) when the deed to Moses D. Bates was made, and that said deed to Bates was meant to convey a lot, the southern line of which was this same line, and that the lot of Bates was conveyed to James McGunnegle, and that the lot conveyed by John to Thomas McKnight was, according to the description of the land contained therein, located next south of said lot conveyed to Bates, and that the deeds given in evidence, connecting Thomas McKnight with the plaintiff, were meant by the parties to them to convey the lot described in the deed from John to Thomas McKnight, they will find for the plaintiff.

4. The jury are instructed that, to ascertain what particular land was conveyed by the deeds which connect Thomas McKnight with the plaintiff, they are to be governed and controlled by the words used in describing *the land only*.

5. And if the jury find that, in any of these deeds, there are words which speak of improvements, or a stone house as being on the lot conveyed, and it is shown in evidence, that the improvements or stone house are not precisely on the lot described, but on a lot adjoining it, then they are instructed that they are to reject from said deeds all the words which

make mention of the improvements or house, and are instructed not to make the location of the ground conveyed be in any manner influenced.by the location of the house.

The court gave the following instructions for defendants, marked 9 and 10 :

9. If the jury believe from the evidence, that Thomas Mc-Knight, under his deed from John McKnight, took possession of a lot of ground, thirty feet front on Main street, bounded north by the land ·on which James McGunnegle lived, and erected a stone house thereon and occupied the same, and he and those deriving title from him, down to the plaintiff, occupied the same for more than twenty years and down to the present time ; and if the jury further believe that the lot on which said house was erected, and which was so actually occupied, did not include any part of the land now sued for, they will find for the defendants.

10. If the jury find that Thomas McKnight took possession of the lot on which the stone house was built, more than twenty years ago, as the lot of thirty feet front on Main street, conveyed to him by John McKnight, and erected valuable improvements thereon, and that such possession was taken with the consent of the adjoining proprietors, and has ever since been held by Thomas McKnight and his grantees, and that the same is no part of the property in dispute in this case, and that said lot contains as much ground as is mentioned in the deeds to the plaintiff, then the plaintiff cannot recover.

The plaintiff made a motion for a new trial, which was refused, and he appealed to this court.

*F. A. Dick*, for appellant. 1. The evidence offered by the plaintiff showed that he had the documentary title to the ground in dispute. In determining what land was embraced in the deeds, the jury should have been directed to confine their attention to the words applying to the land, and to throw out of view the words referring to the erections upon the premises. *Hart* v. *Rector*, 13 Mo. Rep. 497. 1 Greenl. Ev. §301. 2. The instructions given by the court were not warranted by the

evidence, were calculated to mislead the jury, and, as applied to this case, incorrectly stated the law. There was no evidence tending to show how possession of the lot north of that in dispute was taken, nor tending to show the establishment of lines of that lot. 3. The plaintiff was not estopped from asserting his title to the lot. The fact that he never inclosed it does not estop him. The law does not require a man to keep all his land within his inclosure. As he has always had actual possession of the northern part of the lot embraced in his deeds, and as the title by which he holds that part embraces the land in question, in contemplation of law, he has been all the time in possession of the lot in dispute, excepting for such time as defendant was proven to have had possession. *Cottle* v. *Sydnor*, 10 Mo. Rep. 763. *Hall* v. *Powell*, 4 S. & R. 465. *Barr* v. *Gratz*, 4 Wheat. 213. *Green* v. *Liter*, 8 Cranch, 229. 5 Litt. 88. 2 Bibb, 508. Tillinghast's Adams, 54, note 2. 4. The defendant has shown no title in himself either by deed, acts *in pais*, or occupancy and improvement; nor has he shown a general settlement of the lots in that vicinity according to the line he contends for; nor that he has not the full quantity of ground his deeds call for, without including the land in dispute. 5. The evidence showed that for more than twenty years, the plaintiff, and those under whom he claims, have had actual possession of three feet of the land in dispute immediately south of the house; and for that, at all events, he was entitled to a verdict.

*Edward Bates* and *C. Gibson*, for respondent. More than twenty years before the commencement of this suit, Thos. McKnight, under whom the plaintiff claims, under his deed from John McKnight, took possession of the lot on which the stone house was built, as the lot conveyed to him by said John McKnight. He located the lot with the consent of the adjoining proprietors, and erected valuable improvements thereon, and he and those claiming under him have continued in such possession about thirty years. The plaintiff is, therefore, *estopped* from denying the correctness of such loca-

tion. A party may be estopped by acts *in pais*, as by livery, by entry, by acceptance of an estate. Bacon's Ab. vol. 7, p. 618 (new ed.) *Biddle* v. *Hammond*, 13 Mo. Rep. 335. *Taylor & Mason* v. *Zepp*, 14 Mo. Rep. 482. The deeds under which plaintiff claims call for McGunnegle on the north, and one of them describes the lot as "commencing at the south-west corner of the lot on which McGunnegle *now lives*." The south boundary of McGunnegle's lot must be taken to be that which had been established and acquiesced in, and according to which possession has been had for more than thirty years. The calls in the earlier deeds were vague and uncertain, being only the names of adjoining proprietors, whose lots, for aught that appears, were as uncertain in their locations as the land in question. After McKnight covered the entire front of his lot with a house, that house became the most conspicuous and permanent landmark in the neighborhood, and became the governing clause in all the subsequent deeds. It is a settled principle that the most conspicuous and notorious objects called for shall govern, where calls are doubtful or conflicting. Upon this principle it is submitted, that the sheriff's deed to Gamble and all the subsequent deeds down to plaintiff, convey nothing but the thirty feet front on which the house stood. If the plaintiff ever had any title to the land in question, he is barred by the statute of limitations.

RYLAND, Judge, delivered the opinion of the court.

1. This is an action brought by the plaintiff for a lot of ground in the city of St. Louis. To be enabled better to understand this case, the following diagram is made :

Mellon *v.* Hammond ét al.

*Diagram. A.*

E, F, G, H, is the lot of ground belonging to James McGunnegle, according to the deed to him ; being the lot sold by McKnight & Brady to Moses D. Bates, which was afterwards purchased by McGunnegle. F, I, K, G, is the lot conveyed by John McKnight to Thomas McKnight, according to his deed. A, B, C, D, is the stone house built by Thos. McKnight. A, L, M, D, is the lot occupied by Thos. McKnight and those claiming under him, under the purchase at sheriff's sale by Gamble. A, I, K, L, is the lot sued for.

The plaintiff claims under the purchase made by Archibald Gamble at sheriff's sale. By an examination of this plat or diagram, it will be seen that the lot of James McGunnegle is embraced within the lines E, F, G, H, and the lot conveyed by John McKnight to Thos. McKnight is embraced by the lines F, I, G, K—that is, the line F, G, is common to the two. It will also be seen, that the stone house built by Thomas McKnight, embraced between the line A, B, C, D, extends over some fifteen feet or more on the lot of Jas. McGunnegle. This stone house covers the front of the lot marked on the diagram A, L, M, D, being thirty feet on Main street front. The plaintiff contends that he, under his purchase, is the owner of the lot F. I, K, G—that is, that he owns the fifteen feet and some inches front on Main street, south of the stone house, running back the length of the lot.

Let us now see how the plaintiff claims title. Archibald Gamble purchased at sheriff's sale the following described lot: "All the right, title, claim, interest, estate and property of the said Thos. McKnight in and to a lot of ground, situate, lying and being on Main street, in the city of St. Louis, containing thirty feet front, by one hundred and fifty feet in depth, (more or less,) all French measure, bounded on the west by Main street, on the north by a lot belonging to the estate of James McGunnegle, east by a lot belonging to the estate of John McKnight, and on the south by a vacant lot, together with the buildings and improvements thereon, there being a two story stone house on the same, recently erected by the said Thomas McKnight, and, as yet, unfinished." This is the description of the lot conveyed to Gamble by the sheriff, Walker; all the subsequent deeds from Gamble down to the plaintiff, describe the same lot and refer to his purchase.

Now the sheriff did not pretend to sell by the metes and bounds described in the deed from John McKnight to Thomas; he was not selling by a paper title, with the description thereon, but he sells "all the right, title, claim, interest, estate and property which Thomas McKnight had in and to a lot of ground situated on Main street, containing thirty feet front by one hundred and fifty feet in depth, more or less, all French measure, bounded on the west by Main street, on the north by a lot belonging to the estate of James McGunnegle, east by a lot belonging to the estate of John McKnight, and on the south by a vacant lot, together with the buildings and improvements thereon, there being a two story stone house on the same, recently erected by said Thomas McKnight, and as yet unfinished." Now this lot thus described, with the two story stone house erected by Thomas McKnight thereon, thirty feet front, was the lot sold and purchased by Gamble. Thomas McKnight had the possession of this lot; he was building on it. How he and McGunnegle arranged about the fifteen feet on McGunnegle's lot does not appear, nor does it matter. That was the lot bought by Gamble; that was the lot bounded north by

a lot of the estate of James McGunnegle ; that was the lot, all the right, title and claim of McKnight unto which was sold. The distinguishing mark of designation on this lot, was the two story stone house, recently erected by McKnight, and not as yet finished. It was this lot and its improvements thereon which Gamble bought. There is no false demonstration in this description. The sheriff sold a lot, fronting on Main street thirty feet, bounded on the north by a lot belonging to the estate of James McGunnegle, extending one hundred and fifty feet in depth, with a two story stone house erected thereon by Thomas McKnight, not yet finished. ' This is the lot on the diagram A, L, M, D. It is, as will be seen, bounded on the north by a lot of James McGunnegle. It is thirty feet front on Main street—bounded by a vacant lot on the south, and runs back one hundred and fifty feet.

There is no room here to invoke the principle decided by this court in the case of Hart and Rector—there is nothing here to exclude as a false demonstration. There is no pretence that the sheriff's deed to Gamble was for any lot or part of a lot south of the stone house. The lot then in McKnight's possession, on which was the two story stone house, unfinished, thirty feet in front, was the lot bought by Gamble, and has, as appears by the agreed facts in this case, remained in the possession of those claiming under Gamble's purchase ever since.

This lot embraces no part of the ground sued for in this action. Thomas McKnight was in possession of a lot thirty feet front on Main street ; he was building thereon a two story stone house, which was not then finished. North of this lot was a lot of the estate of McGunnegle ; south was a vacant lot—it ran back one hundred and fifty feet, the stone house thirty feet fronting on Main street. This is represented by the lines A, L, M, D. All his right and title to this lot, thus possessed by him—thus described, was sold at sheriff's sale, and bought by Gamble. This lot, then, does not include any part of the lot marked on the diagram A, I, K, L. From this view of the

subject, the plaintiff could not recover below; therefore there is no error in the judgment of the court below for the defendants. It will be affirmed, the other Judges concurring.